423-0502. Would the appellant please introduce herself? Yes. Good afternoon, your honor. It's Glenn Jaswick, I'm the appellant's attorney for 5K Hyler. Jaswick? Jaswick. Jaswick. Okay, thank you. I'm David Mason for the Appellate Prosecutors Office on behalf of the state. You may proceed. Thank you. This is a two-issue case, whether or not the court properly interpreted the reliability hearing statute regarding what is needed for an informant to testify at the time of trial. I will first of all state there are seven different factors that are going to the court's decision, including the complete criminal history of the informant. That was never presented to the court, so that's one missing element that was there from his testimony. The second part is whether or not it's recantation regarding the fact that the informant, Mr. Brooks, never testified regarding any recollection or of any conversation that he had. Where's the recantation? Can you quote that for us? Well, the recantation is the fact that he never admits that he remembered anything, tried to plead the fifth, and then said he didn't recall. So the question is whether or not he recalls, or he does recall, you would believe that if a person recalled and it was accurate, they would state that fact. Here, all he testified to is that he didn't recall anything, and he stood on that because he wasn't able to with the Fifth Amendment. Do we evaluate that differently after the witness has said he does not want to testify, doesn't want to get involved? Correct. But I would state that that is, in fact, a recantation. It can be interpreted as a recantation because he doesn't wish to proceed under oath in a court of law as to what was said in a tape with officers at the time in which he was interviewed at the jail. There's a difference between being interviewed, and that's the whole purpose. I think why the reliability statute is there, to make a determination before this type of information gets in front of a jury that is vetted, to make sure that it's accurate. And that was one of the problems with the officer's testimony, even confirming. And I would say that, as any other information relative to the informant's credibility, is where the officers, in fact, go and do their due diligence by determining whether or not this person was even in the same pod or would have had contact with Mr. Hyland. And nowhere was that shown throughout his testimony with the officers. The officers also weren't able to state that this wasn't something of common knowledge that would have been known to Mr. Brooks. Because, as the state argued in its response regarding the alleged connection between Mr. Brooks and Mr. Hyland, and Mr. Brooks and the victim of this case. So, the question is whether or not he would have had the opportunity or the ability to have information that would have been outside of Hyland telling him. Because sometimes you'd be in a situation where, how would he have known this other than Hyland? Well, they stated we never knew whether or not it was in a newspaper. We didn't know whether or not he could have had access to this. But, problematic also is the fact that, as the facts pour out, the case involves a shooting in a vehicle. His testimony, and what was stated in the interview, was that this all occurred in a home. So, right then and there, regarding just the reliability of what was being told to him and the facts that were being portrayed. This statute is ripe for judicial scrutiny. Because of the fact that there's really, I believe, two cases that touch on it. And this is something that informing testimony, and that's one of the reasons legislative history for this statute, is to protect defendants from people coming into court trying to state that facts were told to them by a defendant. And I think here, with the proper vetting, it was air for the court to have allowed this testimony in at the time of trial without any type of reliability that what was being said was accurate. In other words, they connected the dots, showed that he had the ability to have met with Mr. Hiler, that they had the discussion, even time, place, and location where this occurred. And I mean, that's not even known. Because he testifies that at some time he had this conversation with him where, like, Part C, I was in, something where you can go back and say, this is what happened. And I think it's taking this in and of itself is one thing. But if you take this with the entire case, reasonable doubt whether or not the prejudicial effect of this moves the needle to make it an error that is right for the court to throw out the jury's verdict. But aren't we talking about a lot of credibility issues here where the court had to make that determination? The court does make the determination whether or not. But the question is whether or not from these facts, again, if it's an abuse of discretion, I would say that it is abuse of discretion for the court to have allowed that. My argument goes into the fact of the ramifications and did it, in fact, alter or change the jury's verdict? Would it have been something that would have played into that? And I think definitely it is something based upon, which I'll go with the argument regarding whether or not you can have a guilty verdict based upon the testimony of one witness. And I state that this witness throughout my brief was an incompetent witness, was a witness that did not have any credibility whatsoever based upon the number of times they lied. So I take that into consideration when arguing that this was, in fact, prejudicial error, which did alter and change the course of the verdict by allowing this testimony to come in from Mr. Brooks. It should not have been allowed in. To have allowed it in was error. So then we move to the testimony of John Gordon. Testimony of John Gordon is, in and of itself, an aberration of what a competent, credible witness would be. It's rare when you're able to impeach witnesses as much as Mr. Gordon was impeached in this matter. Mr. Gordon had every story in the world, even from how it's portrayed by when the state brings in their evidence. And if you see everything from when the state directs examination to cross-examination, and you learn all of these facts, we're seeking justice. And none of this is portrayed. It is from the time that Mr. Gordon allegedly exited that vehicle, where he states that vehicle's going 30 miles an hour, I jump out of the car, and I go to the ground. Again, they testify, or the witnesses say that he walked with a limp at some point. No other evidence that this person, 30 miles an hour, older man, jumps out of the car, and doesn't have anything torn, doesn't have anything as far as abrasions, just walks with a limp. He goes to the first house. There was some reference to his clothing. I think it was grass stains that they said on his clothing.  I don't know how grass stains, if you're jumping out of a car onto the roadway, you get grass stains, but in any event, he goes to the first house, tells them that his car had broken down and that he needed to make calls. The police officer then comes, got into a disagreement with his girlfriend, she took off. So, again, what does a credible person do when confronted with this? Do they make a statement that I was just involved, where my car was involved? Then makes a report that his car was stolen. All of these take into consideration the facts as portrayed by the independent witnesses that the state brought in as to John Gordon. As I've always argued in these type of cases, the problem with identification on testimony is misidentification and the fact of being identified by a single person for guilt or innocence. I know the state had a challenge where I brought up about DNA and other scientific evidence. I'm not saying that they have to do that, but what I'm saying is you're relying completely on the identification because you don't have any of this. You've got a person that's driving a vehicle, allegedly, after the event, has the vehicle for a period of time, and yet there's no DNA. So there's nothing to corroborate what Mr. Gordon has testified that this was Devante Gordon and that these are the facts as they allege. They didn't even find the car or the body until these people, including the one that he knew by one name, known by a completely different name, and she testifies regarding they go to the car, and again, albeit after he claimed that the car had been stolen, trying to use his own car device to be able to locate the vehicle. So I think you have a problem, and this isn't a case that relies upon the testimony, credible testimony of one eyewitness. It's the testimony of an eyewitness that is not credible. Where police officers interrogating him, questioning him regarding this, shut it down when he starts talking about the drones that are following him and that how drones, they don't even need to get his testimony because the drones know where this is at. They should just get the video from the drones. And this wasn't an isolated incident where people can say, well, I saw something in the sky. This was something that this person claimed had been following him for a number of years, if not months, and then finally stopped when he stopped looking in the sky or they decided to disappear. But this is the testimony that they're relying upon and that the jury relied upon for its verdict. And I bring that up again just to the fact of allowing the testimony of Mr. Brooks to move that needle prejudicially against Mr. Hyland. And this is a first-degree murder case. This is something where liberty is a question. And all cases are important. All crimes are important and properly to be tried and have a conviction. But for a conviction to stand with these set of facts would be an injustice. And that's why we're asking the court to reverse the jury's verdict and to grant a new trial if not for a verdict in favor of Mr. Hyland. So stating it rather colloquially, the jury knew that Gordon was squirrely. I mean, the jury heard the stuff about the thrones.  Does that mean they discount his testimony entirely? Of Mr. Gordon? Yeah. Well, I believe that they fued in favor of the outside testimony, which included the statements made by Mr. Brooks to in fact, you know... But this eyewitness is not a blue suit guy with a tie that just came from the Episcopal Church. He's involved with these kinds of characters, jumps out of a car, but the jury evaluated him. And I understand you're saying, yeah, but that evaluation is supported by this jailhouse snitch. Correct, and that's what is supported by then the air of its omission becomes even that more exaggerated. I'm saying take out the fact of Mr. Brooks' testimony still to have a jury verdict. And again, a lot of times we try cases with juries because you never know what a jury is going to do. But the appellate court is also a body in place that protects people from having arbitrary or capricious decisions where no reasonable person would have made this determination but for the fact of you have a deceased. And a lot of times people want someone to bear blame for it. But I don't believe that the facts in this case support the verdict. And that's why there's an appellate court to be able to make sure that these injustices don't happen. Thank you counsel. Thank you. Mr. Manchin. Are you pleased with the court, counsel? Regarding the defendant's statements, the standard of review is an abuse of discretion on the part of the trial court. And I think that determination should be made based upon the evidence presented at the admissibility hearing. The fact that the witness tries to walk back his statements or tries not to testify later at trial, I do not think goes into the reliability because the judge did not have that information at the time he made the determination that evidence would be admitted. And there's never any, as I recall, there's never any motion to reopen the question of the admissibility of that statement once he started to waffle and say I don't remember anything. So I think the determination has to be made based upon the evidence at the admissibility hearing. Just saying I don't remember is not a recantation in any shape or form. It's just a witness who suddenly decides he doesn't want to testify against his buddy. Because he did testify at the hearing, the original hearing, that he was friends with the defendant and was friends with the victim both. His testimony was that he came forward because the victim was his buddy. So the trial judge counsel points out that there is no evidence presented regarding the prior criminal history, but there's no evidence that he does have a prior history. What you present to the court is what you have. There was no, nothing ever presented, as I recall, that he had any kind of criminal record that could impeach his credibility. All you had was the fact that he was in jail awaiting charges, which again the trial court knew at the time of the statement. So he did have that information as far as determining is this guy reliable or not. This is not your standard snitch on the streets talking about a drug deal for his dealer. This is a guy who's friends with both the defendant and the victim who testifies that the defendant said he turned around to the left and fired three shots. That's exactly what the Gordon testified, was that the defendant turns around and fires three shots. The physical evidence was that he was shot from the front to the back. So the physical evidence conforms and the testimony of the witness of the trial conforms to what he said, as to what the defendant told him. So I think there was sufficient reliability established for the trial court to admit the defendant's statements that he had shot this guy. Apparently the defendant shot him because he believed he was involved in the shooting of somebody else and the victim was in fact suspected of that particular shooting. Again corroborating information that would support the reliability of the statements. Regarding the reasonable doubt, well that corroborating evidence is a little suspect in that the officers were never able to make a case against the victim. Well that's true, but it's the defendant believed he was involved, is the testimony. And if the police also thought he was involved, that is some corroboration for the defendant's belief. If the police are looking at this guy, maybe he was in fact involved. I agree, it's tempered. Yeah, it's not the same thing as the Pope's word in the three Bibles saying that he was the one that took the statement. But it does provide corroboration or provide support for the statement that the defendant admitted shooting this guy three times, turning around and firing three shots. The guy was shot three times, the description of the shooting, turning around. It all matches. With regard to the reasonable doubt, as Justice Meck said, the jury knew this guy was squirrely. But they didn't do it anyway. The claim that he jumped out of the car, there was evidence to support that. He did have braces, legs. He was limping. His car was damaged afterwards, but not before. They showed that he did in fact jump out of the car while it was moving. And there was evidence that a car went off the road right at the area he said the shooting occurred. The car is found miles away, again supporting his testimony that he jumped out of the car and the guy drove off with it. As far as his prior statements, the jury heard them and could just as say, hey, this guy just didn't want to get involved and was afraid after having seen somebody suddenly pull out a gun and start blasting away. He just didn't want to get involved with his first statement. So it was a matter of credibility for the jury to determine. And the defendant's claim in the appeal is basically that this court should substitute a judgment for that of the jury and to substitute its judgment for the jury's determination as a credibility witness. Counsel has pointed out the lack of DNA or fingerprint evidence. But again, it's not required. And how many cases has this court seen and we've seen where they've done the fingerprint tests on the steering wheel and stuff, but there's nothing ever found? So just for speculation that because it wasn't there, no evidence presented, you must presume that it wasn't there and it wasn't him, just doesn't follow. Because the standard is not that the, neither the trial jury nor this court is required to take all possible innocent explanations for the evidence and raise that to the level of reasonable doubt. And that is exactly what the defendant is asking this court to do. Thank you. Thank you. Rebel? Yes, please. Never say that unless you mean it. I mean this. Just two points really to make. Mr. Manchin talked about the reliability hearing focuses on the facts of the reliability hearing. Then after he says that, he talks about how the reliability is corroborated by this turning motion. Again, which shows the prejudicial effect, if we believe Mr. Manchin, that the reliability of Mr. Brooks saying that he told him that he turned around and shot three times, again, that would accent the fact of allowing that testimony for the prejudicial effect to in fact support that testimony. Secondly, again, my only argument with regarding DNA and fingerprints is the fact that there is no other evidence that you can hang your head on and say forget Mr. Gordon, we have his fingerprint on it. I'm just saying that when the court looks at the evidence and determines whether or not, it's obviously it's the eyewitness testimony that seals the deal. So the question is, is this what the court talks about when credible eyewitness identification? I don't believe that it is. One quick follow-up, and I think that point is well taken and you've made it. With regard to the criminal histories, the criminal justice database, and you've got the informations, the indictments, what was lacking? What were you looking for? What did you not have? As far as Mr. Brooks?  I mean, normally what you'll do is, and again, it's speculation one way or the other, normally you will take the NCIC and provide it to the court. Here's his criminal history. This is what we know. Just like you would do on a bond motion, NCIC, what is his criminal history? He has four convictions out of this county, he has two out of state, something like that, either to advance that he has criminal history or to negate. Anything else is speculation regarding whether or not he has criminal history. But you would provide it then. I'm sorry? You would provide it then. Prior to the hearing? Yes. Yes. Okay. But the record is void of any information that the court took that into consideration when making their determination, even though that's a factor. It's not my job to point out, but it's the court's job to eliminate that because that's the first factor. Thank you. Thank you, counsel. We take this matter under advisement and adjourn the court.